**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:13-cv-101-RJC-DCK**

| | |
|---|---|
| **2 Hounds Design, Inc.,** | ) |
| | ) |
| **Plaintiff and** | ) |
| **Counterclaim Defendant,** | ) |
| | ) |
| **v.** | ) |
| | )     <u>**ORDER**</u> |
| | ) |
| **Jessica Brezinski, USA Dog Shop, LLC** | ) |
| | ) |
| **Defendants.** | ) |
| ——————————————————— | ) |

      **THIS MATTER** comes before the Court on the parties' respective motions for summary judgment and relevant briefs.  (Docs. 61-63, 65, 71).  It is ripe for review.

      **BACKGROUND**

      The parties in this suit operate in the same field of business, namely manufacturing and selling accessories such as harnesses, leashes, and collars, for use by dog owners and trainers.  Plaintiff 2 Hounds Design, (2 Hounds) is a North Carolina corporation, while Defendants Brezinski and USA Dog Shop, LLC (collectively: Brezinski) are residents of New York.  The parties dispute whether 2 Hounds—who is Plaintiff in form only—violated a licensing agreement when it agreed to manufacture, for a third party, a dog harness similar to that covered in the agreement.  2 Hounds filed this suit seeking a declaratory judgment that its actions have been in compliance with the licensing agreement.  Brezinski, in turn, filed nine (9) counterclaims alleging contractual violations and tortious behavior on the part of 2 Hounds.[1]  2 Hounds has moved for summary judgment against Brezinski's claim, while Brezinski has filed a motion for

---

[1] Brezinksi initially filed eleven (11) counterclaims, but has since withdrawn claims for unjust enrichement and good faith and fair dealing as those claims subsist in the claim for breach of contract.

cross-summary judgment.

The relevant facts turn on a licensing agreement entered into by the parties on March 25, 2009. (Doc. 43-1). In that agreement, Brezinski, along with Wiggles, Wags & Whiskers, LLC, (WWW), granted 2 Hounds an exclusive license to use patented material, know-how, and the WWW trademark in return for various payments. The product at issue here was known as the "Freedom No-Pull Harness," ("Freedom Harness" or "Licensed Product"), a dog harness patented by Brezinski and sold by WWW.

At the same time, the parties also executed an asset purchase agreement whereby 2 Hounds acquired all of the assets of WWW, and Brezinski agreed to change the name of her company to USA Dog Shop, LLC.

The Licensing Agreement contained various provisions of significance to this dispute. Among those provisions are the following:

- 2 Hounds received an exclusive non-transferable license to manufacture and sell the Licensed Product and to use the Know-How in the manufacture of that product, as well as collars and leashes. (Id. ¶1).
- The rights obtained by 2 Hounds under the Licensing Agreement are "entire" and operate to exclude all others, including Brezinski, from manufacturing collars, harnesses, and leashes during the term of the agreement. (Id.).
- Brezinski shall be obligated at her sole discretion to enforce the Licensed Patents, including the filing of patent litigation at her expense, and the parties shall equally divide proceeds from such litigation minus litigation costs incurred by Brezinski. (Id. ¶6).
- The rights granted to 2 Hounds cannot be sublicensed without the permission of Brezinski. (¶9).
- 2 Hounds shall "use . . . its best efforts, as determined in 2 Hounds' sole discretion exercised in good faith, to supply the public demand for the Licensed Product . . . [and] to create and promote . . . demand" for the Licensed product." (¶10).

2

- Brezinski will perform consulting, training, sales, and marketing services related to the manufacture and sale of the Licensed Product (Know-How) until December 31, 2009 (the Know-How transfer period).  (¶11)

- As consideration, 2 Hounds will pay Brezinksi $36,000 in installments.  (¶12).

- Use of the Licensed Trademarks on the Licensed Product, collars, and leashes shall be in a form approved by Brezinski. (¶17).

- Advertising on the Licensed Product shall be in a form approved by Brezinski.  (Id.).

- 2 Hounds agrees to pay royalties on "all Licensed Product sold by 2 Hounds" during the agreement.  (¶21).

- 2 Hounds agrees to keep complete and accurate accounting of all Licensed Product sold by 2 Hounds with sufficient detail to enable Brezinski to ascertain the royalties payable to her.  (¶22).

- Brezinski will not offer for sale the Licensed Product except where purchased at wholesale from 2 Hounds. (¶32).

- The parties "each agree to maintain discussions and proprietary information of the other party revealed pursuant to this Agreement in confidence. . . ."  (¶34).

By all appearances, the relationship between 2 Hounds and Brezinski was harmonious during the initial periods of the licensing agreement.  At some point in 2010, the parties had communications about how to broaden the promotion and create a larger public demand for the Freedom Harness.  (¶35).  To that end, 2 Hounds personnel communicated to Brezinski its intent to promote the product by bringing it to the attention of Victoria Stilwell, a dog-trainer who hosts a popular television show dedicated to demonstrating positive reinforcement training techniques.  In addition to her television show, Ms. Stilwell oversees a global network of likeminded trainers, who often coordinate their use of various training methods and products.

The problems began shortly thereafter.  The evidence forecast by Defendants shows that,

at some point in 2011, 2 Hounds ceased obtaining her approval for advertising or design changes to the Freedom Harness. (¶¶ 28-29). By 2013, 2 Hounds had removed the WWW trademark from items and sold these items under a new 2 Hounds label instead. (¶30). Finally, on October 15, 2013, 2 Hounds entered into a manufacturing agreement with Victoria Stilwell Enterprises (VSE) to manufacture the "Positively No Pull Harness," (PNP harness), a harness containing similar features and design as the licensed product. (Doc. 64-8). 2 Hounds arrived at the particular design of the PNP by "tweaking" the design specifications of the Freedom Harness. (Doc. 64-3 ¶20). To date, 2 Hounds has manufactured approximately 308 PNP harnesses to be sold by VSE. (Id. ¶44). In her affidavit, Brezinski maintains that, prior to entering into the manufacturing agreement, VSE expressed to 2 Hounds the possibility of selling the Freedom harness using a VSE label and paying royalties as part of a sub-license such. (Id. ¶19). 2 Hounds, however, neither pursued such an opportunity nor informed Brezinski about it. (Id.).

Finally, Brezinski claims that, at some point in 2013, 2 Hounds stopped using the WWW brand mark on advertisements and altered the WWW website so that it re-directs customers to the 2 Hounds site. (Id. ¶11).

On February 19, 2013, 2 Hounds filed suit in this Court seeking declaratory relief that their actions were not in violation of the licensing agreement. Shortly thereafter, Brezinski filed a range of counterclaims. Since then, both parties have amended their pleadings. (Docs. 42-43). 2 Hounds added a claim for breach of contract to its claim for declaratory relief, alleging that Brezinski violated the licensing agreement by selling the licensed product as a wholesaler.

Brezinski has filed counterclaims for the following: (1) breach of contract; (2) misappropriation of trade secrets; (3) unfair and deceptive trade practices under N.C. Gen. Stat. §

75-1.1; (4) false advertising in violation of 15 U.S.C. § 1125; (5) trademark infringement in violation of 15 U.S.C. § 1114; (6) unlawful use of Brezinski's name or likeness; and, (7) conversion of Know-How. Finally, Brezinksi has moved for a full accounting for the licensed product and a permanent injunction prohibiting, among other things, 2 Hounds from any use of the Know-How, trademark or logo of WWW.

## II. STANDARD OF REVIEW

### A. Declaratory Judgment

Under the Declaratory Judgment Act, a district court having jurisdiction "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right on the litigant." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952). Courts have interpreted the Act's permissive language to "provide discretionary authority to district courts to hear declaratory judgment cases." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998). "[A] declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996)(internal quotation omitted).

The North Carolina Declaratory Judgment Act (NCUDJA) is designed to provide an expeditious method of procuring a judicial decree construing wills, contracts and other written

instruments and declaring the rights and liabilities of the parties thereunder.  <u>Farthing v. Farthing</u>, 70 S.E.2d 664, 665 (1952).  In contrast to the federal declaratory judgment statute, the NCUJDJA explicitly gives courts discretion to decline requests for declaratory relief.  N.C.G.S. § 1-257; <u>Augur v. Augur</u>, 573 S.E.2d 125, 128 (N.C. 2002).

B.      Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  F<small>ED</small>. R. C<small>IV</small>. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. <u>Id.</u>  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the moving party's case."  <u>Id</u>. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  <u>Id</u>. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  <u>Id</u>. at 324.   The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248; accord <u>Sylvia Dev. Corp. v. Calvert County</u>,

<u>Md.</u>, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. <u>Anderson</u>, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009) (internal citations omitted).

When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted). When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion. <u>Id.</u>

## III. DISCUSSION

### A. <u>Breach of Contract</u>

The crux of this dispute centers on whether the parties have complied with the licensing agreement. Under North Carolina law, which governs the agreement, the elements for a breach of contract are: (1) the existence of a valid contract, and, (2) breach of the terms of that contract. <u>Jackson v. California Hardwood Co.</u>, 463 S.E.2d 571, 572 (N.C. App. 1995). A breach of contract is only actionable if a material breach occurs—one that substantially defeats the purpose of the agreement or goes to the heart of the agreement, or can be characterized as a substantial failure to perform. <u>Fletcher v. Fletcher</u>, 474 S.E.2d 802, 807-08 (N.C. App. 1996), <u>disc. rev. denied</u>, 483 S.E.2d 706 (N.C. 1997).

1.      Best Efforts

In seeking declaratory judgment, 2 Hounds posits that the license grants it the right to use the know-how and licensed trademarks, but does not require it to use either. 2 Hounds maintains that the determination of whether to use the know-how or trademarks is subject only to its discretion exercised in good faith. 2 Hounds position, however, neglects to account for the most relevant contractual provision, namely its obligation to "exercise its best efforts, as determined in 2 Hounds' sole discretion exercised in good faith, to supply the public demand for the Licensed Product, and . . . [to] use its best efforts, as determined in 2 Hounds sole discretion exercised in good faith, to create and promote such demand." (Doc. 62-5: Licensing Agreement ¶10).

Normally, the question of whether a party engaged in best efforts or reasonable efforts "is a question of fact to be properly decided by the trier of fact." Egan v. Guthrie, 380 S.E.2d 135, (N.C. App. 1989). In other words, the inquiry is a fact intensive one and normally centers on the omissions of a party, that is, whether a failure to perform certain actions constituted a failure to exercise one's best efforts. Here, the inquiry centers on actions committed rather than omitted, namely whether the production of a similar product for a competitor violates a best efforts clause, irrespective of any efforts to promote the product that is the object of the licensing agreement.

This issue has not been litigated extensively. Nonetheless, the courts that have examined it have concluded that it violates a "best efforts" provision to promote the product of a competing company. In PRC Realty Systems, Inc. v. Nat'l Ass'n of Realtors, the Fourth Circuit, analyzing a Colorado contract, held that a party violated the best efforts provision where it marketed publishing software substantially similar to that which it had agreed to promote as part of a

licensing agreement.  972 F.2d 341 (4th Cir. 1992) (unpublished). The Fourth Circuit held that:

> Any potential ambiguity concerning the extent of the best efforts obligation is not
> at issue given the facts of the present case.  It is clear that no party can provide
> "best efforts" to promote the business of two separate and competing parties . . . .
> A party might be capable of providing "darn good" efforts to more than one party,
> but any reasonable definition of the term "best" indicates that only one party may
> be the beneficiary of any individual's "best" efforts . . . .

Id. at * 9.

Significantly, the provision at issue in PRC Realty contained language establishing that

the determination as to what constituted best efforts lay within the discretion of the party

exercising such efforts.  Id.  Such discretion, however, was not so broad as to allow for actions

directly contrary to the fundamental purpose of the agreement.  Id. at *2.

Similarly, the Third Circuit examined the term "best efforts" in the reviewing the

appropriateness of jury instructions that compared the duty of good faith to obligations to exert

best efforts.  Writing for the panel, then-Judge Alito focused on the nature of an exclusive

agreement as it relates to the question of best efforts, noting that "[t]he obligation placed on the

buyer to use best efforts reflects its monopoly power; the exclusivity arrangement makes the

seller as subject to the decisions of the buyer as a subsidiary within the buyer's firm.  The

obligation of best efforts forces the buyer/reseller to consider the best interests of the seller and

itself as if they were one firm."  Tigg Corp. v. Dow Corning Corp., 962 F.2d 1119, 1125 (3d Cir.

1992).

Notwithstanding the disparate nature of the agreements at issue, the principle at the heart

of the Third Circuit's decision applies equally to this case.[2]  Brezinksi, for valuable

consideration, provided 2 Hounds with an exclusive right to sell the Freedom Harness wholesale.

---

[2] Tigg was a dispute over a requirements contract providing that a purchaser deal exclusively with one seller.

To receive royalties, Brezinski was wholly reliant on 2 Hounds' willingness to promote and sell the product as she lacked legal authority to seek other parties as alternatives in the event that 2 Hounds efforts flagged.

Ultimately, the Court can find no way to reconcile an obligation of a party to use its best efforts to supply the demand for a product with the development by that same party of a competing product to meet the very same demand. This holding is directed by the similarity of the products and markets at issue here; were they different in meaningful respects, one could presume the development of one product to have less bearing on the other. Here, the facts are overwhelming (2 Hounds arrived at the design of the PNP harness by "tweaking" the specifications for the Freedom Harness) that the products were substantially similar and occupied overlapping space in the marketplace. The Court is unpersuaded by 2 Hounds contention that no violation occurs where the party manufactures the competing product for a competitor but does not actively promote it. It follows that at least some PNP harnesses were sold to customers who may otherwise have purchased a Freedom Harness, and that 2 Hounds played a vital role in enabling this to happen. By facilitating such sales, 2 Hounds failed in its obligation to exercise its best efforts to promote and supply the demand for the Freedom Harness. A failure to comply with a duty imposed by contract terms constitutes a breach. See Sale v. State Highway Commission, 89 S.E.2d 290, 296 (N.C. 1955).

For these reasons, the Court **denies** Plaintiff's request for declaratory judgment as its actions cannot be deemed to be in compliance with the terms of the licensing agreement.

2.      Trademark Provisions

Brezinski alleges that, for the last two years, 2 Hounds has used the Licensed Trademark without her permission and has ceased placing the Trademark on the Licensed Product, collars, and leashes. Additionally, by maintaining a website containing the WWW brand that redirects customers to the 2 Hounds website, 2 Hounds has used and advertised the product without seeking Brezinski's approval.

Paragraph 17 of the contract is the controlling provision and provides that: "Use of the Licensed Trademarks on the Licensed Product, collars, and leashes and advertising therefor shall be in a form approved by Brezinksi." (Doc. 62-5 ¶17). The dispute over advertising is a straightforward one as it is addressed squarely by the contract. Insofar as 2 Hounds has engaged in advertising for the licensed product without seeking Brezinski's approval, it has failed to comply with the terms of the licensing agreement.

The more difficult question is whether, assuming the proper payment of royalties, 2 Hounds has a right to produce a version of the licensed product not bearing the WWW trademarks. 2 Hounds contends that they have the right, not the obligation to use the trademark, and that it is not a violation of the agreement to sell the licensed product without the trademark. Indeed, as there is nothing in the express language of the contract that mandates the use of the Trademark on specific products. The question that follows is whether such obligation was implied in the contract.

"The controlling purpose of the court in construing a contract is to ascertain the intention of the parties as of the time the contract was made." Hillard v. Hillard, 554 S.E.2d 374, 377-78 (N.C. App. 2001). "The trial court's determination of original intent is a question of fact." Potter v. Hilemn Labs., Inc., 564 S.E.2d 259, 263 (N.C. App. 2002) (citations omitted).

Reviewing the record, the Court concludes that the evidentiary record is not sufficiently clear to establish whether or not the parties intended to require 2 Hounds to use the WWW trademark on its products. The issue presents a genuine dispute as to a material fact that prevents the entry of summary judgment on the question.

3.      Proprietary Information

Paragraph 34 of the agreement requires the parties to maintain proprietary information revealed to the other party in confidence; that such information be disclosed only to persons "having a need to know"; and that "assurances" will be furnished that the persons to whom such information is revealed "understand this duty of confidentiality." (Doc. 62-5 ¶34). The agreement defines proprietary information as "all scientific, business, or financial information relating to the parties." (Id.).

Brezinski has forecast evidence to suggest that 2 Hounds, without her consent, has disseminated the Know-How to VSE and other trainers in attempts to create a work-around harness and 2 Hounds has provided no evidence disputing this. Significantly, Brezinski alleges that 2 Hounds acknowledged the proprietary nature of such information as it required the non-parties to enter into non-disclosure agreements.

The evidence forecast by 2 Hounds disputes this contention. Here, the Court declines to grant summary judgment as the evidence forecast does not make certain of the exact nature of the proprietary information covered by the agreement and disseminated improperly. The Court finds that factual questions still predominate as to this dispute and declines to grant summary judgment on this.

4.      Failure to Pay Royalties

Brezinski alleges that 2 Hounds failed to pay royalties on items that it sold, or alternately, gave away at trade shows. Having reviewed the evidence forecast, the Court finds genuine issues of material facts to exist as to whether 2 Hounds failed to pay royalties on items sold and whether the licensing agreement required the payment of royalties for items given away at trade shows and for promotional reasons.

5.      Failure to Keep Accurate Books

Paragraph 22 of the agreement requires 2 Hounds keep complete books of account in sufficient detail to enable Brezinski to ascertain royalties accruing and payable to her. (Doc. 62-5 ¶22). Based on the evidence forecast by the parties, a genuine dispute of fact exists as to this claim and summary judgment is not proper.

6.   Damages

2 Hounds argues that, because Defendants cannot prevail on their breach of contract claims as they have not demonstrated a fixed amount of damages. Unlike other jurisdictions, North Carolina courts do not require proof of a certain amount of damages to prove a claim for breach of contract. "In a suit for damages for breach of contract, proof of the breach would entitle the plaintiff to nominal damages at least." <u>Bowen v. Bank</u>, 183 S.E.2d 266, 268 (N.C. 1936). However, this does not dispense with the necessity of proving damages. "A plaintiff has an obligation to prove such facts as will furnish the basis for a calculation of damages. <u>Biemann and Rowell Co. v. Donahoe Companies, Inc.</u> 556 S.E.2d 1 (2001). Having found liability for breach of contract as to various aspects of the contract, the Court cannot at this point grant summary judgment for Defendants on the breach of contract claims as there remains a genuine issue of material fact as to the nature and amount of damages.

13

In summary, for the reasons discussed above, the Court **grants** partial summary judgment for Brezinski as to liability and finds that 2 Hounds breached various provisions of the contract including, using its best efforts to promote the licensed product, obtaining Brezinski's approval for advertising. However, finding that genuine issues of material fact persist as to the amount of damages, the intent of the parties in whether to require the use of the WWW trademarks, the nature of the proprietary information involved and the failure to keep accurate books, the Court **denies** summary judgment as to those discrete issues.

7. Breach of Licensing Agreement by Brezinksi

Finally, 2 Hounds has alleged that Brezinski sold items at wholesale in violation of the terms of the licensing agreement. Brezinski does not dispute that such sales occurred but claims that they occurred with 2 Hounds' consent and that they were not material to the contract. Finding that such sales would constitute a material breach of the agreement, the Court nonetheless declines to grant summary judgment in light of the factual dispute over whether consent to make such sales existed.

B. Trade Secrets

Although Brezinski has not cited to any particular law, it appears that she has alleged that 2 Hounds misappropriated her trade secrets in violation of North Carolina's Trade Secrets Protection Act. N.C. Gen. Stat. § 66-152 defines a trade secret as business or technical information that "[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development . . . and [is] the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C. Gen. Stat. § 66-152(3)(a)-(b) (2003). Factors to consider when determining whether an item is a trade

secret are:

> (1) the extent to which information is known outside the business; (2) the extent to which it is known to employees and others involved in the business; (3) extent of measures taken to guard secrecy of information; (4) the value of information to business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

State v. ex rel. Utils. Comm'n v. MCI, 514 S.E.2d 276, 282 (1999).

Finally, it is generally accepted that "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has . . . occur[ed]." Analog Devices Inc. v. Michalski, 579 S.E.2d 449 (N.C. 2003). Examining the factors listed above, the Court is not convinced that the proprietary information at issue constitutes a trade secret as Brezinski has provided no evidence to demonstrate that the proprietary information satisfies any of the factors enumerated under North Carolina law. The information was obtained by 2 Hounds as part of a licensing agreement, which provided that Brezinski would impart to Plaintiff and various associated trainers certain Know-how related to the Freedom Harness. Significantly, Brezinski never identifies the nature of the secret material beyond a general description as consisting of the "Know-How" referenced in the licensing agreement. In this light, the allegations and evidence put forward by Brezinski support a claim for breach of the confidentiality provisions rather than an action at tort for violation of trade secrets. Accordingly, the Court **grants** 2 Hounds motion for summary judgment as to this claim.


C.     Unfair and Deceptive Trade Practices

In order to recover under North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA), a party is obligated to show: (1) that the defendant committed an unfair or deceptive act or practice, (2) that was in or affecting commerce, and, (3) proximately caused injury. Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). North Carolina courts have established rigorous standards for a statement or action to qualify as an unfair or deceptive trade practice. A mere breach of contract cannot sustain a UDTPA claim without a showing of "substantial aggravating circumstances." Griffith v. Glen Wood Co., 646 S.E.2d 550, 558 (N.C. App. 2007).

In considering the North Carolina statute, the Fourth Circuit offered the following guidance: "We think it unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (citations omitted).

Where, as here, the crux of the dispute is contractual, an unfair and deceptive trade practices claim is generally not appropriate. The type of conduct that has been found sufficient to constitute a substantial aggravating factor has generally involved forged documents, lies, and fraudulent inducements. See, e.g., Garlock v. Henson, 435 S.E.2d 114, 115-16 (N.C. App. 1993) (forgery of bill of sale); Foley v. L & L Int'l, Inc., 364 S.E.2d 733, 736 (1988) (retaining deposit under false pretenses). No such "substantially aggravating" factors exist in this case and to allow such a claim to go to trial based on the evidence forecast would be contrary to the Fourth Circuit's admonition against allowing unfair trade practices claims to "piggyback" on a breach of contract action. Broussard, 155 F.3d at 347.

For this reason, the Court **denies** Defendants' motion for summary judgment and **grants**

16

Plaintiff's motion for summary judgment on Defendants' counterclaim for unfair and deceptive trade practices.

D.     Trademark Infringement

To establish trademark infringement under the Lanham Act, a plaintiff must prove: (1) that it owns a valid mark; (2) that the defendant used the mark in commerce without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers.  15 U.S.C. §1114(a); see Rosetta Stone Ltd. V. Google, Inc., 676 F.3d 144 (4th Cir. 2012).

Here, the second and fourth factors are significant in light of the terms of the licensing agreement.  Where a trademark holder has authorized another to use its mark, there can be no likelihood of confusion and no violation of the Lanham Act if the alleged infringer uses the mark as authorized.  See Segal v. Geisha NYC LLC, 517 F.3d 501 (7th Cir. 2008).  A use by a licensee which is outside of the scope of the license is both trademark infringement and breach of contract. Masters v. UHS of Delaware, 631 F.3d 464 (8th Cir. 2011), cert denied, 131 S. Ct. 2920 (2011).

Brezinski makes two concrete allegations of trademark infringement, namely that the removal of the WWW mark from products covered by the licensing agreement constituted infringement, and that the altering the WWW website to re-direct traffic to the 2 Hounds site constitutes an unauthorized act of ownership over the WWW trademark. The Court disagrees in light of the plenary and exclusive nature of the licensing agreement.  At best, it is a question of material fact whether the licensing and asset agreements effectively divested Brezinski of

meaningful ownership interest in the WWW trademark and replaced it with a contractual right to inspect merchandise bearing the trademark for quality control purposes and to approve certain advertising.[3]  In this regard, the exclusive nature of the agreement is significant; it not only prevents others from using the WWW trademark, but it also prohibits Brezinski from manufacturing and selling wholesale items bearing this trademark.

This question is largely academic, however, because the Court finds that Plaintiff cannot establish customer confusion.[4]  Courts consider a variety of factors in determining whether a use of a mark is likely to cause confusion, including:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity in advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and, (9) the sophistication of the consuming public.

George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009).  This list of factors is not intended to be exhaustive or mandatory, but to serve as "a guide—a catalogue of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion."  Rosetta Stone, 676 at 154 (quoting Anheuser-Busch, Inc. v L & L Wings, Inc.,  962 F.2d 316, 320 (4th Cir. 1992)).

---

[3] The Court reads Paragraph 16 of the agreement as primarily a quality control provision.  It establishes that: "The Licensed Product and leashes and collars manufactured by or for 2 Hounds using the Know-how and sold under the Licensed Trademarks is to be of comparable or better quality, to that of the same products currently sold by Brezinski.  Brezinski shall have the right exercised in good faith to inspect products sold under the Licensed Trademarks and to specify changes necessary to maintain this quality. . . ."  Paragraph 17 reads: "Use of Licensed Trademarks on the Licensed Product, collars, and leashes and advertising therefor shall be in a form approved by Brezinski.
[4] Much of the evidence on "customer confusion" submitted by Brezinksi turns on potential confusion between the Freedom Harness and the Positively No Pull Harness manufactured by 2 Hounds and sold by VSE under its own mark.  As VSE is not a party to this suit, this evidence has no relevance to the claim for trademark infringement and is relevant only insofar it addresses potential damages for breach of contract.

The factors here do not demonstrate a likelihood of confusion. 2 Hounds had already purchased all of the assets of WWW as well as the exclusive right to sell its products at wholesale. A customer who went to WWW's website to be re-directed to 2 Hounds would merely conclude that the two entities had undergone some form of merger or sales agreement— exactly what had occurred in this case. Whatever risk of confusion that might have occurred by 2 Hounds selling WWW's products would have occurred under the normal terms of the licensing agreement as such arrangement was contemplated by the parties; indeed, it was the primary purpose of the agreement for goods bearing the WWW trademark to be sold by 2 Hounds. The agreement did not require 2 Hounds to take significant measures to ensure that the WWW trademark be used in such manner as to avoid clear association with 2 Hounds. Likewise, none of the other factors support a finding that customer confusion existed in this case.

For these reasons, the Court **denies** Defendant's Cross-motion for Summary Judgment on the Claim for Trademark Infringement and **grants** Plaintiff's motion as to this claim.

E.      False Designation of Origin and False Advertising

Similar to trademark infringement, the analysis for false designation and false advertising contains five elements. To prevail under these actions, a trademark holder must prove:

> (1) that it possesses a mark; (2) that the opposing party used the mark; (3) that the opposing party's use of the mark occurred in commerce; (4) that the opposing party used the mark in connection with a sale, offering for sale, distribution, or advertising of goods or services; and, (5) that the opposing party used the mark in a manner likely to confuse consumers.

People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001) (citing 15 U.S.C. §§ 1114, 1125, and Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 930 (4th Cir. 1995)).

For the same reasons expressed in the claim for trademark infringement, the Court finds

no genuine issue of material fact and that no rational factfinder could find a violation of for false

designation of origin or false advertising. Therefore, the Court **denies** Defendant's motion for

summary judgment and **grants** Plaintiff's motion for summary judgment as to these claims.

F.  Unlawful Use of Name or Likeness

North Carolina courts have recognized the right to one's name or likeness as grounded in

the right to one's privacy. See Hall v. Post, 372 S.E.2d 711, 713 (N.C. 1988). In Renwick v.

News and Observer Pub. Co., the North Carolina Supreme Court engaged in an extended review

of torts related to the use of a person's name or likeness. 312 S.E.2d 405. (N.C. 1984). The

Court wrote:

> A review of the current tort law of all American jurisdictions reveals cases
> identifying at least four different interests in privacy: (1) appropriation, for the
> defendant's advantage, of the plaintiff's name or likeness; (2) intrusion upon
> plaintiff's seclusion or solitude or into his private affairs; (3) public disclosure of
> embarrassing private facts about the plaintiff; and, (4) publicity which places the
> plaintiff in a false light in the public eye.

Id. at 411.

Having considered whether 2 Hounds committed infringement by failing to offer

sufficient tribute to the WWW trademark (and, by extension, Brezinski), the Court now turns to

whether 2 Hounds has been tortiously profligate in asserting overmuch its association with

Brezinski. It has not. The facts in dispute surrounding the use of the WWW trademark and the

public association with Ms. Brezinski form the basis of a legitimate contract dispute; they do not

implicate matters of privacy in such manner as to fall within the ambit of tortious behavior. This

claim is wholly without merit. Accordingly, the Court **denies** summary judgment for Defendants

and **grants** summary judgment to Plaintiff on this claim.

G.      Conversion of Know-How

North Carolina courts have defined conversion as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Variety Wholesalers, Inc. v. Salem Logistics Traffic Services, LLC, 723 S.E.2d 744 (N.C. 2012).   Brezinski has not alleged that 2 Hounds converted any goods or personal chattels and the claim fails as a matter of law.   In North Carolina only goods and personal property are properly the subjects of a claim for conversion. Norman v. Nash Johnson & Sons' Farms, Inc., 537 S.E.2d 248, 264 (N.C. App. 2000).  Nor are intangible assets such as intellectual property, business opportunities or expectancy interests subject to a conversion claim.  Id.  The Court grants summary judgment for Plaintiff's on this claim.

H.      Accounting

Brezinksi moves this Court in equity to order 2 Hounds to conduct a full accounting of its activities.  Unfortunately, Brezinski has not included any supporting precedent of courts awarding such relief in similar situations.  Absent such support, the Court declines to offer equitable relief.  The facts alleged by Brezinski show that 2 Hounds performed under the contract for a not-insubstantial period of time before breaching on its agreements.  Brezinski possesses sufficient information to make reasonable calculations of the lost revenues suffered as a result of 2 Hounds breach of contract.  Accordingly, Defendants' Demand for Accounting is **denied**.

G.      Injunction

It is a general rule that damages recoverable in an action at law ordinarily afford an adequate compensation for the breach of a contract for the sale of goods.  See Bell v. Concrete Products, Inc., 139 S.E.2d 629, 630 (1965). "Jurisdiction to enforce specific performance rests . . . on the ground that damages at law will not afford a complete remedy." Id.  Here, the Court finds no reason to presume that a remedy is not available at law in the form of monetary damages.  For this reason, the Court **denies without prejudice** Defendants' motion for a permanent injunction.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1.    Plaintiff's Request to for Declaratory Judgment on its claim for Declaratory is **DENIED**;

2.    Plaintiff's Motion for Summary Judgment for Breach of Licensing Agreement by Jessica Brezinski is **DENIED;**

3.    Plaintiff's Motion for Summary Judgment on Defendant's claim for Breach of Contract is **denied**;

4.    Defendant's Motion for Summary Judgment for Breach of Contract is **GRANTED in part and DENIED in part** as genuine issues of fact exist as to whether the parties intended to mandate the use of the WWW trademark on the licensed product, collars, and leashes; the payments of royalties on items given away; whether 2 Hounds paid proper royalties; the nature of the proprietary information; and the amount of damages ascertainable on various claims.

5.    Plaintiff's Motion for Summary Judgment on misappropriation of trade secrets is

22

**GRANTED** and Defendants' cross motion is **DENIED**;

6.     Plaintiff's Motion for Summary Judgment for Unfair and Deceptive Trade Practices is **GRANTED** and Defendants' cross motion is **DENIED**;

7.     Plaintiff's Motion for Summary Judgment for Trademark Infringement is **GRANTED** and Defedants' cross motion is **DENIED**

8.     Plaintiff's Motion for Summary Judgment for False Designation or Advertising is **GRANTED** and Defendants' cross motion is **DENIED**;

9.     Plaintiff's Motion for Summary Judgment for Unlawful Use of Name or Likeness is **GRANTED**; and Defendants' cross motion is **DENIED**;

10.    Plaintiff's Motion for Summary Judgment for Conversion is **GRANTED**; and Defendants' cross motion is **DENIED**;

11.    Plaintiff's Motion for Summary Judgment as to an Accounting is **GRANTED**; and Defendants' cross motion is **DENIED**;

12.    Plaintiff's Motion for Summary Judgment for a Permanent Injunction is **GRANTED**; and Defendants' cross motion is **DENIED without prejudice**.

Signed: September 8, 2014

Robert J. Conrad, Jr.
United States District Judge

23